UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUSTIN COLLIBEE,

        Petitioner,

v.                                Case No:   2:15-cv-55-FtM-38MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

        Respondents.[1]

_____/

## OPINION AND ORDER[2]

    This matter comes before the Court upon a petition for habeas corpus relief and supporting memorandum filed pursuant to 28 U.S.C. § 2254 by Justin Collibee ("Petitioner") (Doc. 1; Doc. 2, filed January 30, 2015).   Petitioner, a prisoner at the Moore Haven Correctional Facility in Moore Haven, Florida, attacks the conviction entered by the Twentieth Judicial Circuit Court in Collier County, Florida in 2007 for aggravated child

---

    [1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004)(citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

    [2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

abuse (Doc. 1 at 1).   Respondent filed a response to the petition (Doc. 15).   Petitioner

filed a reply (Doc. 20).

Petitioner raises two claims in his petition.   Upon due consideration of the

pleadings and the state court record, the Court concludes that each claim must be

dismissed or denied.   Because the petition may be resolved on the basis of the record,

an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474

(2007) (if the record refutes the factual allegations in the petition or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing).

**I.    Background and Procedural History**

On August 27, 2007, Petitioner was charged with aggravated child abuse in

violation of Florida Statute § 827.03(2)(Ex. 1 at 22).[3]   After a jury trial, he was found guilty

as charged and sentenced to fifteen years in prison (Ex. 1, Vol. 1 at 59).   The conviction

was affirmed by Florida's Second District Court of Appeal (Ex. 5).

On October 16, 2012, Petitioner filed a motion pursuant to Rule 3.850 of the Florida

Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 20).   The post-conviction court

denied relief (Ex. 25).   Florida's Second District Court of Appeal affirmed (Ex. 28).

Petitioner signed the instant petition on January 26, 2015 (Doc. 1).

**II.    Governing Legal Principles**

**A.    Standard of Review Under the Antiterrorism Effective
Death Penalty Act ("AEDPA")**

Habeas corpus is neither a substitute for a direct appeal nor a device for federal

review of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332

---

[3] Unless otherwise indicated, citations to exhibits are to those filed by Respondent
on July 27, 2015 (Doc. 19).

n.5 (1979).   Indeed, pursuant to the AEDPA, federal habeas relief may not be granted

with respect to a claim adjudicated on the merits in state court unless the adjudication of

the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v.*

*Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim,

even without explanation, qualifies as an adjudication on the merits which warrants

deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state

court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in

violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);

*Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather

than the *dicta*, set forth in the decisions of the United States Supreme Court at the time

the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S.

70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the

Supreme Court has also explained that "the lack of a Supreme Court decision on nearly

identical facts does not by itself mean that there is no clearly established federal law,

since 'a general standard' from [the Supreme Court's] cases can supply such law."

*Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely

established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S.

Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1).    A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).    The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).    Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be

correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

### B.   Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.   *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"   *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.   *Bousley v. United States,* 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

### A.   Claim One

Petitioner asserts that trial counsel was ineffective for attempting to merely cast doubt on the state's case instead of arguing that the victim's mother, Michelle Murphy ("Murphy"), was the person actually responsible for the injuries inflicted on the child (Doc. 2 at 2).   Specifically, he claims that:

> Instead of asserting the obvious, that the mother, Michelle Murphy, was the perpetrator of the crime, instead, defense counsel decided to introduce a fly-by-the-seat-of their-pants argument consisting of a "battle of the experts," whereby a gun for hire, Dr. Uscinski, hypothesized that "shaken baby syndrome" does not exist, and instead advanced a cockamamie espousal of trickery, hoping to game the jury into believing that a burp and other types of soft child's play, could somehow cause major hemorrhaging of the brain.

*Id.* at 2-3.   Petitioner raised this claim in his Rule 3.850 motion (Ex. 20).   In response to the motion, the state argued *inter alia* that defense counsel had <u>not</u>, in fact, suggested that shaken baby syndrome does not exist – rather, counsel had: (1) presented a "multi-faceted" defense demonstrating that Murphy was as likely as Petitioner to have harmed the child out of frustration; (2) asked questions designed to create doubt about the timeframe of when the bleeding in the child's brain had begun; and (3) sought to suggest an alternate cause (other than "shaken baby syndrome") for the bleeding (Ex. 22 at 2-3). The post-conviction court, adopting the state's detailed response, denied the claim (Ex. 25).   Florida's Second District Court of Appeal affirmed the post-conviction court's rejection (Ex. 28).

Petitioner does not dispute the post-conviction court's conclusion that defense counsel had sought to cast doubt on the state's case by presenting an explanation for the

child's injuries other than Petitioner's actions.    However, in the instant petition, Petitioner

argues that the state courts missed the point he was trying to make in this claim:

> The State argued that trial counsel asked questions designed
> to create doubt about the nature of the cause of the bleeding;
> that cross-examination was designed to create doubt about
> the timeframe within which the bleeding in the infant's brain
> began; that the testimony of defense witnesses Dr. Uscinski
> and Dr. Schulman were designed to suggest an alternate
> cause for the bleeding in the infant's brain that did not involve
> the infliction of any trauma by anyone, all of which appears to
> support their claim that trial counsel used as "multi-faceted
> defense."
>
>                              . . .
>
> In actuality, trial counsel compelled all of the above testimony
> in order to show the jury that there was an explanation beyond
> the State's theory of Appellant's guilt, which is not the same
> as saying the defense set forth a case that implicated the
> mother, as it should have done given the obvious facts.

(Doc. 2 at 3-4).    In other words, Petitioner merely disagrees with counsel's strategy and

believes that counsel should have blamed Murphy for the victim's injuries instead of

attempting to show that Petitioner had not committed the crime or that no crime had even

occurred.    A petitioner cannot prevail on a claim of ineffective assistance merely because

he disagrees with his counsel's strategy. *Jones v. Barnes*, 463 U.S. 745, 752 (1983).

The burden is on the petitioner to "overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Michel v.

Louisiana*, 350 U.S. 91, 101 (1955) (internal quotations omitted).

        Petitioner urges that counsel's decision not to focus the defense on blaming

Murphy for the victim's injuries was unreasonable because Murphy is the mother of the

victim; has a violent past; was alone with the victim prior to his injuries; has a psychiatric

history; and played with the child by tossing him into the air (Doc. 2 at 4).    Although

Petitioner asserts that "there was plenty of evidence available to the Defense that would

show that Michelle Murphy was unstable and unfit to be a responsible mother," he does not provide the Court with any such evidence.   To the extent Petitioner relies on an inadmissible report from Child Protective Services ("CPT Report") containing Murphy's *self-reported* psychiatric history, a review of the report does not indicate that Murphy has a "violent past" as alleged by Petitioner.   The report indicates that Murphy told the investigator that she participated in counseling when she was twelve to thirteen years old, was prescribed Zoloft for depression when she was fourteen, and was Baker Acted[4] when she was sixteen years old after she broke up with her boyfriend and somebody overheard her say she was going to kill herself (Doc. 23 at 3).   Murphy denied any suicidal or homicidal ideation.[5]   *Id.*   As to Petitioner's claim that Murphy played with the child by "tossing him in the air," the CPT report states only that Murphy denied playing roughly with the victim and stated that "at times she tosses Landan softly (not far from her arms)."   (Doc. 23 at 6).   The report does not state that Murphy tossed the victim in the air roughly.   Nor does the report indicate that Murphy has a "violent past" as Petitioner now asserts (Doc. 2 at 4).   To the extent Petitioner assumes that, had counsel further

---

[4] The "Baker Act" refers to Florida Statute §§ 394.451-47891 (Florida Mental Health Act) which allows the temporary involuntary institutionalization and examination of an individual for up to 72 hours if there is evidence that the person is a harm to himself or others.

[5] A review of Petitioner's Rule 3.850 motion indicates that Petitioner may have misread, or deliberately misstates, the CPT report on the issue of Murphy's "suicidal or homicidal ideation."   In his Rule 3.850 motion Petitioner alleges that" (1) the CPT report states that Michelle Murphy had "accusations of homicidal and suicidal ideations" (Ex. 20 at 15); (2) Murphy had "possible suicidal and homicidal ideations" *Id.* at 19; (3) Ms. Murphy had "possible homicidal and suicidal ideations" *Id.* at 25; and (4) Murphy had a history of "homicidal and suicidal ideations" *Id.* at 34.   In contrast to Petitioner's repeated assertions, the CPT report states only that "Murphy **denied** suicidal and homicidal ideation." (Doc. 23 at 3) (emphasis supplied).   Notably, the same report stated that *Petitioner* also "denied suicidal and homicidal ideation." (Doc. 23 at 5).

investigated Murphy, he might have cobbled together evidence that Murphy may have harmed the victim (so as to cast doubt on Petitioner's guilt), vague and conclusory allegations are insufficient to support a claim for habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel); *Gonzalez v. Knowles*, 515 F.3d 1006, 1014–16 (9th Cir .2008) (claims "grounded in speculation" do not establish prejudice under *Strickland*); *Sargent v. Armontrout*, 841 F.2d 220, 226 (8th Cir. 1988) ("When seeking habeas relief, the burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden").

Given that Petitioner does not dispute that counsel's strategy was designed specifically to cast doubt on the state's case, and given that Petitioner has not presented any admissible evidence to the Court implicating Murphy in the victim's injuries, under *Strickland*, this Court refrains from second-guessing what otherwise appears to be sound trial strategy.   Claim One is denied. 28 U.S.C. § 2254(d).

###   B.   Claim Two

Petitioner asserts that he was denied his Sixth and Fourth Amendment rights due to prosecutorial misconduct, including the state's knowing presentation of false or misleading evidence (Doc. 1 at 5).   The basis of this claim is unclear.   Petitioner does not indicate in his petition what "false or misleading" evidence was presented at his trial.[6]

---

[6] This claim could be dismissed on this ground alone.   Rule 2(c) of the Rules Governing Habeas Corpus Cases under Section 2254 states that a petitioner must specify all grounds for relief in his petition and "state the facts supporting each ground." The Rules do not require the federal courts to review the entire state court record to ascertain whether facts exist which support relief. *See Adams v. Armontrout*, 897 F.2d 332 (8th Cir. 1990); *Beard v. Clarke*, 18 F. App'x 530, 531 (9th Cir. 2001) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas

Instead, he argues that the post-conviction court erroneously concluded that this claim was procedurally barred from consideration (Doc. 2 at 6).   Indeed, the state argued in response to Petitioner's Rule 3.850 motion that his claims of prosecutorial misconduct were procedurally barred because they should have been raised on direct appeal (Ex. 22 at 17).   The post-conviction court adopted the state's response and denied the claim (Ex. 25 at 2).   Florida's Second District Court of Appeal affirmed (Ex. 28).   Petitioner now argues that the state court erred under *Robinson v. State*, 65 So. 3d 75, 76 (Fla. 2d DCA 2011) by dismissing the claim because "a *Giglio*[7] violation is typically raised in a post-conviction motion because these violations are usually discovered *after the trial is over*." (Doc. 2 at 6) (emphasis in original).

Even if instant claim is the same as that asserted in Claim Four of Petitioner's Rule 3.850 motion, it is unclear that he actually asserts a *Giglio* violation.   Instead, despite its label, the gravamen of the claim raised in state court was that Petitioner believed there was insufficient evidence to support his conviction.   Specifically, Petitioner stated in his Rule 3.850 motion:

> The prosecutor had access, prior to trial (and before defense counsel), to the complete CPT investigatory files.   The prosecutor knew the following:

_____

relief. . . . Notice pleading is insufficient; the petitioner must state sufficient facts.") (citations omitted).   However, in an abundance of caution, the Court will construe Claim Two to be the same claim as raised in Ground Four of Petitioner's Rule 3.850 motion. To the extent Petitioner intended to raise new or different claims, they are dismissed pursuant to Rule 2(c).

[7] In *Giglio v. Unites States*, 405 U.S. 150 (1972)   the Unites States Supreme Court held that the prosecution's failure to inform the jury that a witness had been promised not to be prosecuted in exchange for his testimony was a failure to present all material evidence to the jury, and constituted a violation of due process, requiring a new trial.

1.   That Michelle Murphy lied on her polygraph exam when asked if she injured the victim.

2.   That Michelle Murphy had an admitted history of playing with the victim by tossing him in the air and catching him;

3.   That the victim could have been injured by the improper play.

4.   That, other than tossing the baby and catching him, there was no physical evidence of any injuries (bruises, broken bones, etc.) and no explanation for the cause of the hematoma.

5.   That Michelle Murphy was warned by her pediatrician to watch out for seizures. (A fact she denied on the witness stand.)

6.   That Michelle Murphy had substantial psychiatric issues.

The prosecutor, notwithstanding this knowledge, elected to remain "willfully ignorant" of any evidence that would call Murphy's credibility and involvement into question, and put Murphy on the witness stand, thus allowing her to lie to the jury while the prosecutor did nothing.

Perhaps the prosecutor felt justified under some perverse theory that it is the duty of *defense* counsel to investigate Murphy, so (by extension) he had a license to deceive the jury unless and until he got caught.   The problems with this approach to justice are many.

. . .

First and foremost, a jury trial is supposed to be a search for the truth, not a means of "notching a gunbelt."   A jury trial is not a sporting event, and the concepts of "winning and losing" must be subordinated to the concept of finding the truth. Regardless of the verdict, "victory" rests with a truthful determination, and nothing more.

In *DeFreitas v. State*, 701 So. 2d 593 (Fla. 4th DCA 1997), the Court held that prosecutors in our system carry a special burden.   The prosecutor is not just an "advocate" to procure a "judgment" favorable to his "client."   A prosecutor has an overriding duty to use the awesome power of the state as a vehicle to *seek justice*.

Accordingly, a prosecutor commits fundamental error when he knowingly misrepresents the facts of a case, or allows false testimony into the record, and then sits on his hands and waits to see if the defense attorney "catches on". *See Mackey v. State*, 55 So. 3d 606 (Fla. 4th DCA 2011).

The state's knowing use of false testimony is an established ground for relief and for a new trial. *See Porterfield v. State*, 442 So. 2d 1062 (Fla. 1st DCA 1983); *Bogan v. State*, 211 So. 2d 74 (Fla. 2d DCA 1968).

A hard and impartial review of the actual evidence, untainted by prejudice reveals that the state had only the following "evidence":

1. The Child had a subdural hematoma and some retinal tearing.

2. The retinal tearing could have been caused by the hematoma as opposed to any battery on the child.

3. None of the examining physicians could place a specific "time" in which any injuries were inflicted on the child or any "shaking" took place.

4. The child did not have any bruising or external signs of injury.

5. Both Mr. Collibee and Ms. Murphy were alone with the child during the period of April 25-26.

6. Ms. Murphy has a significant psychiatric history.

The State buried the bad information pointing to Murphy and put Mr. Collibee on trial based upon bias and innuendo. Furthermore, the State knowingly put Ms. Murphy on the stand to pose as the "dear little mommy" without disclosing Murphy's own history of mental illness, lies and deceit.   While defense counsel may have had a duty to impeach, the State had a duty not to put on false or deceptive evidence in the first place.   Again, this was not a game, it was a jury trial with real human lives on the line.

Indeed, and to hammer home the point:   Imagine a scenario in which Mr. Collibee was home alone with the Child for the entire day prior to the seizure.   Imagine that it was Ms. Murphy who arrived home late at night (from work) and was asleep.   Imagine that it was Mr. Collibee who had a history of being   "Baker   Acted",   using   Zoloft,   trouble   in   school,

> depression, homicidal and suicidal ideations.   Imagine that
> Mr. Collibee, after lying to the CPT Team, later admitted that
> he played with the newborn infant by tossing him into the air
> and catching him.   Could this Court imagine the outcry if, on
> those facts, Murphy was arrested while Mr. Collibee was
> handed the baby and allowed to flee the state?   The outrage
> would be deafening.

(Doc. 20 at 39-34).   If this is a sufficiency of the evidence claim, the procedurally correct

way for Petitioner to have raised it in state court is by direct appeal. *Upshaw v. Singletary*,

70 F.3d 576, 579 (11th Cir. 1995) ("A petitioner requesting a federal court to issue a writ

of habeas corpus must have presented his claims to the state courts in a procedurally

correct manner.").   Florida courts are clear that issues that could have been raised on

direct appeal are not cognizable on collateral review. *See Harvey v. Dugger*, 656 So. 2d

1253, 1256 (Fla. 1995) ("[I]ssues that could have been, but were not, raised on direct

appeal are not cognizable through collateral attack.").   Moreover, post-conviction

proceedings cannot be used as a second appeal. *Swafford v. Dugger*, 569 So. 2d 1264,

1267 (Fla. 1990).   A Florida District Court of Appeal's *per curiam* affirmance of a circuit

court's ruling explicitly based on procedural default "is a clear and express statement of

its reliance on an independent and adequate state ground which bars consideration by

the federal courts." *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).   Because

Petitioner failed to properly raise this claim in state proceedings, resulting in the

application of a procedural bar by the state courts, the claim is likewise procedurally

barred from review in this Court.

Even if the Court were to conclude that Petitioner properly raised a *Giglio* claim in

his post-conviction motion as he now urges, the claim fails. *See* 28 U.S.C. § 2254(B)(2)

("An application for a writ of habeas corpus may be denied on the merits, notwithstanding

the failure of the applicant to exhaust the remedies available in the courts of the State.").

In *Giglio v. United States*, the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury[.]" 405 U.S. at 154.   On habeas review, a petitioner must meet a more onerous standard to justify relief based on *Giglio*.   The federal habeas petitioner must prove that: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned to be false testimony (a *Giglio* violation); and (2) the error had "substantial and injurious effect or influence in determining the jury's verdict." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1112 (11th Cir. 2012) (applying the harmless error test that applies to federal habeas review of state convictions set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).   Petitioner has satisfied neither of these requirements.

This claim appears to be based upon Petitioner's pique that he, not Michelle Murphy, was charged with harming the victim.   To the extent Petitioner believes the prosecutor should have elicited testimony from Murphy that she told the Child Protective Team investigation that she played with the victim by tossing him in the air or that she had some psychological problems as a child, there was no testimony presented at trial, perjured or otherwise, on these issues for the prosecutor to correct – even if such would have been admissible at trial.

Moreover, a review of Murphy's testimony indicates that to the extent any false or incorrect testimony was presented, it did not have a substantial and injurious effect on the jury.   Petitioner takes particular exception to Murphy's testimony at trial that she had not been cautioned to watch for seizures by the victim's doctor (T. at Supp. I, 21) and notes that the CPT report stated that "Ms. Murphy reported during the last pediatric check-up Landan received his vaccinations and the pediatrician told them that there may be the

- 16 -

possibility that Landan may suffer from seizures.   She stated the pediatrician instructed them to look for the symptoms of a seizure." (Doc. 23 at 2).   This misstatement was corrected by Petitioner when he testified that, six weeks prior to the incident, the victim's doctor had cautioned him to watch for seizures after the victim's vaccination (T. at Supp. II, 13, 31).    No evidence was presented at trial suggesting (and Petitioner does not now argue) that the victim was injured as a result of a vaccine-related seizure, and the jury was aware that the victim's doctor had cautioned the parents about the possibility of seizures related to the vaccine.   Therefore, Murphy's trial testimony on this issue could not have had a substantial and injurious effect on the jury's verdict.   In addition to being subject to dismissal as procedurally barred, Claim Two is denied on the merits.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   __Certificate of Appealability__[8]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v.*

---

[8] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id.   As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

*Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Florida Attorney General is **DISMISSED** as a named Respondent.

2.      Claim One of the petition is **DENIED**.   Claim Two is **DISMISSED** as unexhausted.   Alternatively, Claim Two is **DENEID**.

3.      Petitioner is **DENIED** a certificate of appealability.

4.      The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of December, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Justin Collibee
Counsel of Record